Volunteer Firemen's Relief Association, Appellant, *v.* Minehart.

Argued April 24, 1964. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Paul H. Rhoads,* with him *George B. Balmer, Henry W. Rhoads, Ralph W. D. Levan,* City Solicitor, and *Snyder, Balmer & Kershner,* and *Rhoads, Sinon & Reader,* for appellants.

*Morris Gerber,* Deputy Auditor General, with him *William H. Smith,* First Assistant Counsel, for Auditor General, *Russell A. Davis,* Counsel for State Treasurer, *Edward Friedman,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for appellees.

*Andrew R. Klein,* filed a brief for amicus curiae.

OPINION BY MR. JUSTICE COHEN, September 29, 1964:

By the Act of June 28, 1895, P. L. 408, §2, as amended, 72 P.S. §2262, the amount collected by the Commonwealth from the two percent state tax on gross premiums received annually by foreign fire insurance companies from business done by them within the Commonwealth is to be paid by the State Treasurer to the treasurers of the various municipalities within the Commonwealth and by the latter to the firemen's relief associations or pension funds in each municipality. Payment from the State Treasurer to the municipalities is to be made pursuant to warrants drawn by the Auditor General from time to time.

As originally enacted in 1895, this statutory provision contained no direction regarding payment by the municipalities to the firemen's relief fund associations or pension funds. We pointed out in an early case that once the moneys were paid by the State Treasurer to the municipalities, they might be used by the latter for any lawful purpose. *Firemen's Relief Ass'n v. Scranton,* 217 Pa. 585, 66 Atl. 1103 (1907).

The present requirement that the moneys be paid to firemen's associations or funds was first added by the amendment of April 25, 1929, P. L. 709. Shortly thereafter, in an opinion from the office of the Attorney General of Pennsylvania, Relief Funds for Firemen, 13 Pa. D. & C. 65 (1929), the Auditor General was advised that if a municipality had no firemen's relief

fund association, it had no right to retain the moneys received from the State Treasurer and should return them. And in *Commonwealth v. Souder,* 172 Pa. Superior Ct. 463, 94 A. 2d 136 (1953), aff'd, 376 Pa. 78, 101 A. 2d 693 (1954), it was decided that individual members of an association designated by a municipality to receive these moneys could not divide the moneys privately but had to use them for the purpose indicated by the statute—i.e., the general relief and protection of the members of the association. It was noted, however, that "The manner in which the [relief] fund was to be set up or administered was left by the legislature to the municipalities." 172 Pa. Superior Ct. 463, 470, 94 A. 2d 136, 139.

Finally, in his Formal Opinion No. 684, 1957, Op. Att'y Gen'l 20, the Attorney General of Pennsylvania informed the Auditor General that the latter has a duty to audit the accounts and records of firemen's relief fund associations which receive the moneys paid to the municipalities by the State Treasurer. This duty arises from section 403 of The Fiscal Code, Act of April 9, 1929, P. L. 343, 72 P.S. §403, which requires the Auditor General's Department to audit the accounts and records of every recipient of money payable from the State Treasury as far as is necessary to satisfy the Auditor General that the money received is being expended properly. If it is not being expended properly, the Auditor General is to notify the Governor and decline to approve any further requisitions for payment to such recipient until the amount improperly expended is equaled by an amount properly expended.

It is in the context of this background that the present case arises. The City of Reading (City) has properly designated The Volunteer Firemen's Relief Association of the City of Reading, Pa. (Association), as the recipient of funds paid to the City by the

State Treasurer from the tax on premiums of foreign fire insurance companies. Pursuant to the duty imposed upon it by The Fiscal Code, supra, the Department of the Auditor General made an audit of the accounts and records of the Association for the period January 1, 1959, through December 31, 1961. On February 26, 1962, the Auditor General notified the Association that his Department had noted several improper expenditures of funds (specifying them) and recommended that such practices cease. In addition, the Auditor General called attention to a letter from his chief counsel to the Association's counsel on February 21, 1962, regarding an alleged improper use of funds by the Association and stated that further State allocations would be withheld until the situation was corrected by the Association.

The improper use of funds referred to arose from the establishment by the Association of a "Special Death Fund" consisting of the interest on its investments and of annual dues. Membership in the Special Death Fund is limited to those active members of volunteer fire companies in the City of Reading who pay an application fee of $1, provide a physician's statement of good health, pay $1 in dues annually and are under 40 years of age. The Auditor General objected to this Special Death Fund because it was not available to all members of the Association. Since the interest received by the Association on the moneys received from the State's allocation is thus used for the benefit of fewer than all the members, the State funds are being used improperly, according to the Auditor General.

Thereafter, the City and the Association filed a complaint in mandamus requesting the court to order the Auditor General to requisition payment of the amount due the City for 1962 and the State Treasurer to pay such amount. The defendants filed preliminary

objections claiming that mandamus was an improper remedy because (1) plaintiffs had an adequate legal remedy under the Act of March 30, 1811, P. L. 145, as continued by The Fiscal Code, supra, §1003, 72 P.S. §1003, and (2) mandamus cannot be used to compel performance by a public officer of an act which involves discretion on his part.

The court below decided (1) that the Attorney General's Formal Opinion No. 684 was correct and that the Auditor General did have a duty to audit the books and records of the Association and (2) that the plaintiffs did have an adequate remedy under §1003 of The Fiscal Code and should proceed thereunder. It then dismissed the complaint, and the City and Association appealed to this Court.

In their brief before us, the City and Association state that they are withdrawing the argument that the Auditor General has no power to audit the accounts of firemen's relief fund associations. We note this withdrawal and point out that the contrary position is without merit. Under section 403 of The Fiscal Code the Auditor General must audit these accounts, and the Attorney General's Formal Opinion No. 684 is correct in so holding.

Initially, then, the City and the Association (appellants) argue that mandamus is a proper remedy here and that the procedure under §1003 of The Fiscal Code is not available when an action is one to compel public officials to perform their legal duties. We agree completely with appellants.

Section 1003 of The Fiscal Code is a continuation of the Act of March 30, 1811, P. L. 145, whereby persons having claims against the Commonwealth were permitted to present them to the Auditor General and State Treasurer for settlement. This procedure has long been regarded as a method whereby the Commonwealth has waived its sovereign immunity from

suit and permitted persons seeking money from it to present their claims for determination of validity and amount. See *Fitler v. Commonwealth,* 31 Pa. 406 (1858); *Merchants' Warehouse Co. v. Gelder,* 349 Pa. 1, 36 A. 2d 444 (1944). In a general way it may be regarded as establishing a tribunal wherein the Commonwealth may be sued by a putative creditor. It does not function and has never functioned, however, as a medium for enforcing compliance by a public official with his legal duties. This latter situation has long been regarded as being within the scope of mandamus.

Clearly, mandamus lies to compel the performance of a purely ministerial duty. For example, if a statute requires an official to grant a license to an applicant upon payment of a specified fee and the official refuses to do so, mandamus is the proper remedy to compel action. Moreover, it is true in this state that mandamus will lie to compel performance by a public official of a legal duty even if the existence and/or scope of the duty must be found and defined in the mandamus action itself. On the other hand, mandamus will not lie to compel performance of a discretionary act or to govern the manner of performing a required act. See *Travis v. Teter,* 370 Pa. 326, 87 A. 2d 177 (1952); *Meadville Area School District v. Department of Public Instruction,* 398 Pa. 496, 159 A. 2d 482 (1960); *Getz v. Lehighton Borough,* 407 Pa. 357, 180 A. 2d 230 (1962). In applying these principles, we have held that mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law. *Meadville Area School District v. Department of Public Instruction,* supra.

The present case falls squarely within these principles. The Auditor General is enjoined by law to requisition the tax funds here in question for pay-

ment to the municipalities. He is required, also, to audit the ultimate recipients of those funds to insure that the moneys are being used for the purposes required by law. This is not a situation where waiver of the State's sovereign immunity from suit is required before suit may be brought. The statutory law has already provided for payment of the funds; from the standpoint of the State itself the "claim" has been established by statute. In other words, the only issue here is the propriety of the action taken by a. public official in denying payment of these funds; and mandamus is the proper remedy to try this issue.

In performing his statutory duties, the Auditor General has no discretion. He may act only in accordance with the law. If he determines that the law requires him to decline approval of further requisitions for payment to the City of Reading, his determination in this respect is subject to review by the courts in a mandamus action. The situation is very much akin to that found in *Bowers v. Pennsylvania Labor Relations Board,* 402 Pa. 542, 167 A. 2d 480 (1961), where, in an action in mandamus, a dismissed member of the Board sought recognition as a member of the Board and the full salary due him as a member of the Board. The question of whether the salary was due him had *not,* contrary to what the court below stated in the present case, been determined prior to the mandamus action. It was an essential issue in the action and depended upon the Court's interpretation of the constitutional and statutory provisions involved. Just as here, it was not a question of controlling discretion, but one of deciding if a public official had acted in accordance with law.

For these reasons we decide the mandamus is a proper remedy to try the correctness of the Auditor General's determination that the Association has used state tax moneys improperly. Since the relevant facts

have not been determined in this context, we must return the proceeding to the lower court so that the Auditor General and State Treasurer may file an answer to appellants' complaint and proceed to try disputed issues of fact in the normal fashion.

The judgment of the court below dismissing appellants' complaint is reversed and the case is remanded for further proceedings consistent with this opinion.