## Berkowitz v. State Civil Service Commission

*Edward N. Barol, Berger, Riely, Speece & Barol,* for plaintiff.

*Edgar R. Casper,* for defendant.

BOWMAN, J., September 13, 1965.—This is another of a series of cases [1] testing sweeping amendments enacted by the legislature in 1963 [2] to the Civil Service Act of August 5, 1941, P. L. 752, 71 PS §741.1, et seq.,

---

[1] Hunter v. Jones, 83 Dauph. 125 (1964), affirmed 417 Pa. 372 (1965); Kelly v. Jones, 83 Dauph. 144 (1964) appeal pending, Berkowitz v. Wilbar, Secretary of Health, 82 Dauph. 357 (1964) affirmed 416 Pa. 369 (1965).

[2] Amendatory Act of August 27, 1963, P. L. 1257.

whereby thousands of State employes were brought within the coverage of legislative civil service. Such employes had heretofore enjoyed only the protection of executive civil service or their public employment was without any such protection.

This particular action is one in mandamus wherein plaintiff seeks an order of this court directing defendant Civil Service Commission (commission) to conduct a hearing upon his appeal to it from his discharge from State employment, and, upon determination that his discharge was unlawful, to order his reinstatement in employment with retroactive pay.

Defendant has filed preliminary objections raising questions of jurisdiction and in the nature of a demurrer to the effect that plaintiff has failed to state a cause of action. Plaintiff countered with a motion for summary judgment under Pennsylvania Rule of Civil Procedure 1098.

The facts are not in dispute, and the posture of the pleadings would also require us to accept them as true for the purpose of disposing of the preliminary objections and the motion for summary judgment.

In doing so, an opinion of the Supreme Court of Pennsylvania involving the same plaintiff and raising substantially the same issues must be considered. In that case,[3] plaintiff had filed a complaint in equity which, among other things, sought a preliminary injunction to restrain the Secretary of Health from discharging plaintiff from State employment. We refused the preliminary injunction and plaintiff appealed. In sustaining the action of this court, the Supreme Court (Roberts, J.) observed (page 374):

"We are not unaware of the fact that the Civil Service Commission, not a party to the instant proceedings, in refusing appellant a hearing, begged some of

---

[3] Berkowitz v. Wilbar, Secretary of Health, cited in footnote 1.

the very questions which appellant raises. That is, in refusing a hearing because appellant was not in the classified service, the Commission assumed the very conclusion which appellant sought to disprove. Accordingly, appellant's remedy is by way of an action in mandamus to establish, if he can, his right to a hearing and reinstatement. See Volunteer Firemen's Relief Ass'n. v. Minehart, 415 Pa. 305, 203 A. 2d 476 (1964) ; Pittsburgh City Fire Fighters Local No. 1 v. Barr, 408 Pa. 325, 184 A. 2d 588 (1962) ; Travis v. Teter, 370 Pa. 326, 330-31, 87 A. 2d 177, 179 (1952) ; Slessinger v. Fairley, 340 Pa. 273, 16 A. 2d 710 (1940) ; Raffel v. Pittsburgh, 340 Pa. 243, 16 A. 2d 392 (1940)'".

In a concurring opinion in which Mr. Justice Eagen joined, Mr. Justice Cohen further observed (page 375) :

"The roadblocks that the Governor, the Budget Secretary and the Executive Board of the Commonwealth have placed before appellant's effort to obtain a judicial evaluation of their acts in removing appellant from the classified service of the Commonwealth should merit the grant of equitable relief. To me it seems most oppressive that appellant should be denied the statutory relief provided by the Civil Service Act to question the determination that his employment was in the unclassified service and to question his summary removal on instructions received from the Governor's personal secretary.

"The Civil Service Act of 1963 was passed to strengthen and extend civil service employment in the Commonwealth, and the legislature did not contemplate that the Act would be perverted to provide an instrumentality for the destruction of the civil service status of employees who were classified before the passage of the Act. The Civil Service Commission, on two occasions, refused to permit appellant to be heard on the theory that he was no longer protected by the Civil Service Act. We have recently held that mandamus will

lie to compel action by an official where his refusal to act in the requested manner stems from his erroneous interpretation of the law, Volunteer Firemen's Relief Assoc. v. Minehart, 415 Pa. 305, 203 A. 2d 476 (1964). Hence, because an action at law is readily available to appellant I reluctantly concur".

Being unsuccessful in his bid for a preliminary injunction in the equity proceeding, and encouraged by the above observations of the Supreme Court, plaintiff has dropped further proceedings in that case and pursues this action in mandamus.

Prior to his dismissal from State employment on May 27, 1964, plaintiff was an employe of the Department of Health of the Commonwealth, holding the position of Institutional Business Manager II at a State tuberculosis hospital. Under contract between the Department of Health and Civil Service Commission, pursuant to section 212 of the Civil Service Act,[4] this position was administered as a merit system position pursuant to subsection (c) of section 2111 of The Administrative Code of 1929,[5] as amended August 24, 1951, P. L. 1340, sec. 3, which empowered the Advisory Health Board:

"(c) To adopt rules and regulations for personnel administration based upon merit and fitness, including standards of recruitment, selection, tenure, removal,

---

[4] Act of August 5, 1941, P. L. 752, as amended, 71 PS §741.212, which provides, in part, that:

"(a) The services and facilities of the commission and its staff shall be available to the State departments, boards and commissions set forth in [paragraph (c)] *clause (d)* of section three of this act and to other State departments, boards, commissions or agencies and political subdivisions of this Commonwealth upon such terms and conditions as may be prescribed by the rules of the commission, which rules shall provide for the payment to and reimbursement of the Commonwealth for the reasonable cost of such services and facilities".

[5] Act of April 9, 1929, P. L. 177, as amended, 71 PS §541.

and working conditions, and to prescribe qualifications for professional, technical and executive personnel appointed or employed by the State Department of Health and by the departments or boards of health of counties or other political subdivisions. No restrictions shall be imposed relating to race, religion, residence, or political affiliation".

In that position, plaintiff held regular status since January 9, 1958, having served a probationary period and having successfully passed competitive examinations prior to that time.

In 1963, the legislature enacted Act No. 520 (Act of August 27, 1963, P. L. 1257, supra, effective the same date, herein referred to as the 1963 amendatory act), which gave rise to the test cases above referred to, and the provisions of which are again the subject of controversy in this action.

Section 3 (c) (1) of the 1963 amendatory act provides, in part, that the *unclassified* service includes:

". . . all positions now existing or hereafter created . . . in departments and agencies included in clause (d)[6] of this section, which are held by: (1) . . . all other supervisory personnel *whose duties include participation in policy decisions*". (Italics supplied.)

On November 1, 1963, plaintiff was advised by the Director of Personnel of the Department of Health that his position had been placed in the "unclassified service," the given basis for the action being the above provisions of the 1963 amendatory act. Plaintiff then appealed this determination to the commission. It replied that it had no jurisdiction to entertain the appeal, inasmuch as the subject of what positions fell into the unclassified service rested with the Governor, the Budget Secretary and the Executive Board of the Commonwealth.

---

[6] Clause (d) defines "classified service" to include all positions in the Department of Health other than patient employes.

On February 5, 1964, plaintiff received written notice from the commission that his position had been placed in the unclassified service, effective August 27, 1963. Then, on April 24, 1964, plaintiff was notified by the Secretary of Health that he was dismissed from his position, effective at a fixed future date, and, while no reason was assigned for his dismissal, he was reminded that his position was in the unclassified service.

On May 1, 1964, plaintiff appealed his dismissal to the commission, which replied that he had no right to a hearing and referred to its prior advice to him that it had no jurisdiction with respect to the propriety of his position having been determined to be in the unclassified service. At this point, plaintiff instituted the equity action heretofore mentioned and on July 13, 1964, initiated this action in mandamus.

As above noted, by this action plaintiff seeks an order of this court directing the commission to conduct a hearing "on the merits of this petition and complaint and that upon a finding that no reasonable or just grounds for his dismissal existed to order his immediate reinstatement into" his former position with retroactive pay.

In his complaint, plaintiff contends that his dismissal from State employment was unlawful in that:

"(a) his position was not one of a supervising employe whose duties included participation in policy decisions and therefore not within the scope of Section 3 (c) (1) of the Civil Service Act as amended by the 1963 amendatory act, or

"(b) assuming his position did include participation in policy decisions, Section 30 of the 1963 amendatory act effectively retained his position in the classified service.

"(c) Section 3 (c) (1) of the Act, as amended, is so vague and uncertain as to constitute an unconstitutional delegation of legislative authority, or:

"(d) assuming said section is not per se unconstitutional, it is unconstitutional as to plaintiff in depriving him of tenure and appeal.

"(e) Section 28 of the 1963 amendatory act retained his position in the classified service, notwithstanding the provisions of section 3(c)(1).

"(f) the Commission's refusal to grant plaintiff a hearing on his appeal from dismissal was arbitrary, unjust and contrary to law and authority conferred upon the Commission by the Civil Service Act.

"(g) the Commission's refusal to grant plaintiff a hearing on his appeal from dismissal denied to plaintiff his vested rights contrary to the Civil Service Act and constitutional due process".

It is well settled that mandamus will lie to compel a public official to perform a mandatory or ministerial act which he is legally obligated to perform and which the complainant is legally entitled to receive; and that such an action will lie to compel performance by a public official of a legal duty *even if the existence and/or scope of the duty must be found and defined in the mandamus action itself:* Volunteer Firemen's Relief Association v. Minehart, 415 Pa. 305 (1964); Pittsburgh City Fire Fighters Local No. 1 v. Barr, 408 Pa. 325 (1962).

In applying these principles, it has been held that mandamus will lie to compel action by an official *where his refusal to act in the requested way stems from his erroneous interpretation of the law:* Volunteer Firemen's Relief Association v. Minehart, supra; Meadville Area School District v. Department of Public Instruction, 398 Pa. 496 (1960).

While conceding the validity of these general principles, the commission insists that in refusing to afford plaintiff a hearing on his discharge from State employment, it so acted because the Governor and the executive board removed plaintiff's position from that of

regular employe in the classified service to the unclassified service by virtue of the authority conferred upon them to do so under section 3 (c) (1) of the 1963 amendatory act, supra. Hence, the commission argues, it has no power or authority to pass upon the issue of whether these officials acted properly, and a hearing on a subject over which it has no jurisdiction would be a futile act and not a proper subject of mandamus inasmuch as it has no duty to perform.

We are not persuaded that the commission can so easily avoid the duties and responsibilities which the legislature has seen fit to impose upon it under the Civil Service Act, as amended.

Plaintiff's complaint and his prayer for relief put in issue in this mandamus action the existence and/or scope of the legal duty of the commission to conduct the hearing sought by plaintiff incident to his discharge from State employment. In our opinion, plaintiff has brought himself within the scope of the general principles set forth above.

At this juncture, therefore, we conclude that this court has jurisdiction of this action in mandamus, even though the existence and/or scope of the legal duty alleged to have been violated by the commission must be found and defined in this particular mandamus action. Having jurisdiction in mandamus, what mandatory or ministerial acts, if any, is the commission legally bound to perform?

As above noted, plaintiff seeks a hearing before the commission, at which hearing he may voice his contentions that his discharge from State employment was unlawful. Does the commission have a duty to afford plaintiff such a hearing within the framework of plaintiff's allegations as to the unlawfulness of his discharge and his prayer for not only a hearing, but for reinstatement in employment?

Section 807 of the Civil Service Act, as last amended

by the 1963 amendatory act, protects any *regular employe* in the *classified service* from discharge "except for just cause".

Section 950 of the act requires every *person* in the *classified service* to be given written notice of any personnel action taken against him, and, in the case of *regular employes,* requires such notice to set forth the reasons for such action.

Section 951 provides, in part, as follows:

"(a) *Any regular employe* in the *classified service* may, within twenty calendar days of receipt of notice from the appointing authority, appeal in writing to the commission. Any permanent separation, suspension for cause, furlough or demotion on the grounds that such action has been taken in his case in violation of the provisions of this act, upon receipt of such notice of appeal, the commission shall promptly schedule and hold a public hearing. As soon as practicable after the conclusion of the hearing, the commission shall report its findings and conclusions to the appointing authority and the employe. If such final decision is in favor of the employe, the appointing authority shall reinstate him with the payment of so much of the salary or wages lost by him as the commission may in its discretion order". (Italics supplied.)[7]

By the 1963 amendatory act, the legislature thus limited the right to a hearing on the subject of person-

---

[7] Subsection (d) of this same section also provides, in part:

"(d) Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder", which indicates that the Legislature intended to afford broad investigatory powers to the commission in performing its duties of administering the civil service system.

nel action taken against a State employe to those persons who are regular employes in the classified service. The commission's *duty* to afford such a hearing would, of course, be of equal scope.[8]

Was plaintiff a regular employe in the classified service at, or immediately before, the effective date of the 1963 amendatory act?

Plaintiff contends that section 30 of the 1963 amendatory act affords him such status. It provides:

"Nothing contained in this amendatory act shall be construed to remove from the classified service *any position* which was *in the classified service in the service of the Commonwealth* immediately prior to the effective date of this amendatory act". (Italics supplied.)

We are of the opinion that plaintiff cannot invoke the provisions of this section to afford him the status of a regular employe in the classified service. While he at that time was admittedly a regular employe under a merit service, he was not "in the classified service in the service of the Commonwealth" on the effective date of the 1963 amendatory act. Prior to the passage of the 1963 amendatory act, "classified service" was limited to positions "in the service of the Commonwealth", which, in turn, was narrowly defined to include only those positions which were generally referred to as legislative civil service positions and did not include those that were known as executive civil service or merit system positions. By employing the rather unusual phrase, "in the classified service in the service of the Commonwealth" in section 30 of the 1963 amendatory act, we believe the legislature intended to limit its scope to all positions of State employment which had

---

[8] An exception not pertinent here deals with hearings on being discharged for alleged discriminatory reasons. See Hunter v. Jones, cited in footnote 1.

theretofore enjoyed the protection of legislative civil service. As a precautionary measure amidst the complexities of extending legislative civil service coverage to many more State employes, we believe the legislature desired to make it clear by this section that those who theretofore enjoyed legislative civil service protection were not to be considered as being excluded by any provisions of the amendatory act. We therefore, conclude that section 30 does not afford plaintiff a continuing status of regular employe in the classified service which would give rise to a duty on the part of the commission to conduct a hearing incident to his discharge.

Plaintiff next contends that if section 30 does not afford him the status of a regular employe in the classified service, then section 28 of the 1963 amendatory act does. It provides, in part:

"Status of Certain Employes.—On effective date of this amendatory act: (a) any person occupying a position in the classified service as defined in section 3(d), which, on the day preceding the effective date of this amendatory act, was under any type of merit system by virtue of legislative or executive authority, shall be accorded the status he held on such date, except that . . ." [9]

It is not disputed by the commission that, generally speaking, the classified service now includes the Department of Health, by which plaintiff was employed at the time of his discharge; nor does it deny that plaintiff when discharged held the status of a regular employe with that department.

The clear language of this section would, therefore, afford plaintiff the status of a regular employe in the classified service on the effective date of the 1963 amendatory act and bring him squarely within the provisions of section 951, supra, affording him a right to

---

[9] Followed by a number of exceptions not here pertinent.

such a hearing concerning his discharge from State employment. And section 807, supra, would afford him protection from discharge except for "just cause".

It is at this point, however, that the commission contends section 3(c)(1) of the 1963 amendatory act, supra, and the actions of the Executive Board, the Budget Secretary and the Governor thereunder, removed plaintiff's position from the classified service and thus denied to it any power or authority over his dismissal or the right to inquire into it through the process of a hearing.

There can be no doubt that the legislature in expanding the coverage of legislative civil service and affording new protections and procedures to cover State employes also curtailed the powers and duties of the commission and its director in the area of classification of positions and other related personnel standards.

By adding new sections 707 and 708 to the Civil Service Act and making other consistent amendments and repeals,[10] these functions were assigned to the Executive Board, the Governor and the Budget Secretary. These sections provide:

"Section 707. Classification and Compensation. — The classification of positions and the compensation of employes *in the classified service* shall conform to standards and rules adopted by the Executive Board. In the development of such classification standards for adoption by the Executive Board, the Budget Secretary shall consult with the Executive Board and with the staff of the commission in so far as such standards relate to the examination functions of the commission".

---

[10] Section 703 relating to the powers of the commission and its director to fix hours of work, vacations, leaves of absence, etc., was repealed.

Sections 203 and 206 relating to the duty of the commission and its director to classify positions and fix salaries were appropriately amended.

"Section 708. Other Personnel Standards and Rules.
—With respect to such other personnel management
matters as hours of work, paid holidays, vacations and
sick leave and employe training, employes *in the class-
ified service* shall conform to standards and rules estab-
lished by the Governor and the Executive Board for
Commonwealth employes generally". (Italics sup-
plied.)

In essence, it is the commission's position that the
legislature by these provisions intended to wholly and
completely divest it of any and all duties and respon-
sibilities not only of establishing standards for the
classification of positions *in the classified service,* but
also of determining the very essential questions of what
positions in State employment are within or excluded
from the classified service. As particularly applicable
to this case, it contends that these sections divest it of
any and all duties or responsibilities of determining
what positions in State employment which otherwise
would be within the classified service are excluded
therefrom by section 3 (c) (1), supra, because the posi-
tion is supervisory and includes participation in policy
decisions. These determinations, the commission says,
are now exclusively within the power of other officials
of the executive branch.

We do not believe the legislature intended to effect
such a sweeping change in the law. First, it must be
noted that sections 707 and 708 refer only to positions
and employes "in the classified service". To hold that
these sections confer upon the named officials power to
determine whether a position is or is not in the classified
service would not only go far beyond the specific lan-
guage employed, but would also afford to an admin-
istration hostile to the concept of civil service in State
employment a simple and expeditious means of frus-
trating the manifested legislative intent of greatly
expanding such coverage. In our opinion, these changes

were effected by the legislature primarily for the purpose of achieving uniformity of job classifications and attending salaries in the classified and unclassified service, and that this goal could best be accomplished by placing this responsibility in the hands of the named officials. We do not believe that these sections can be resorted to as the source of power and authority of such named officials, to the total exclusion of the commission, to determine what positions in State employment otherwise within the classified service as defined by the legislature are to be removed therefrom by reason of the application of section 3(c)(1).

Section 3(c)(1) itself is completely silent as to who or what agency is authorized or empowered to exercise the grant of such power as conferred by the legislature. In the absence of any such designation, we believe it to be clear that the commission possesses and must exercise such power and authority. Section 1312 of The Administrative Code of 1929, as amended,[11] imposes upon the commission the duty to "administer and carry out the provisions of the Civil Service Act". The essential duty of enforcing the act thus lies with the commission. In performing this duty, it is equally essential that the very basic question of what State employes are within or without the classified service be determined. The commission has never hesitated to generally exercise its duty and corresponding power in this area when faced with such an issue, and it may do no less here. As related to section 3(c)(1), it cannot deny this duty under an erroneous interpretation of the statute that the power to determine coverage as applicable to supervisory employes in policy making positions lies with other officials when the legislature has not clearly designated other State officials to perform this duty.

We, therefore, conclude that the commission has

---

[11] 71 PS §362.

erroneously interpreted the provisions of the 1963 amendatory act as to the existence and/or scope of its duty thereunder; that consistent with the standards and rules adopted by the Executive Board relating to the classification of positions in the classified service, it has a duty to determine whether a particular position in State employment, otherwise within the meaning of a regular employe in the classified service, is one of supervisory personnel whose duties include participation in policy decisions; and that it has a duty to afford plaintiff a hearing on this question since plaintiff, except for determination of the application of section 3(c)(1) to his position, is otherwise a regular employe in the classified service as defined by section 28 of the 1963 amendatory act.

Inasmuch as we have found a duty to exist on the part of the commission to make a determination of whether or not plaintiff's position in State employment was within or excluded from the classified service within the meaning of section 3(c)(1), we need not now pass upon plaintiff's remaining contentions.[12]

For the foregoing reasons, we make the following

## ORDER

AND NOW, September 13, 1965, defendant's preliminary objections are dismissed, plaintiff's motion for summary judgment is hereby granted, and the Civil Service Commission of the Commonwealth is hereby directed to promptly schedule and hold a public hearing, pursuant to the provisions of section 951(a) of the Civil Service Act, for the purpose of determining whether plaintiff's position at the time of his discharge from State employment as Institutional Business Manager II at a State tuberculosis hospital was one of

---

[12] As to whether there exists a constitutionally protected interest in discharge from State employment without cause or without a hearing: Kelly v. Jones, cited in footnote (1).

supervisory personnel whose duties include partici-
pation in policy decisions within the meaning of section
3(c) (1) of the Civil Service Act, and upon making a
determination (a) that such position is within the
meaning of section 3(c) (1) dismiss the appeal, or (b)
that such position is not within the meaning of section
3(c) (1) order the Department of Health to reinstate
plaintiff in such position with the payment of so much
of the salary or wages lost by plaintiff as the commis-
sion may in its discretion order.