# Eberly v. Board of School Directors of Neshaminy School District

M. H. Goldstein, for plaintiffs.

Harvey B. Levin, and with him Lazarus, Levin & Maxman, and Harris & Sykes.

BODLEY, J., July 3, 1967.—This action in mandamus is brought by several school teachers who seek a decree which would direct their employer, the Board of School Directors of Neshaminy School District, to set up a grievance panel under the Public Employees' Act of June 30, 1947, P. L. 1183, as amended, 43 PS §§215.1-215.5. Defendant has filed preliminary objections in the nature of a demurrer.

Plaintiffs are members of the Neshaminy Federation of Teachers, Local No. 1417. On behalf of themselves and of the federation, they requested the board to grant them a check-off privilege; that is to say, they asked the board to deduct federation dues from the salary of each member and transmit the same to the federation. Upon the board's denial of this request, plaintiffs asked the board to set up a panel under the Public Employees' Act to "dispose of the grievance". The board refused and this action followed.

Mandamus is an extraordinary writ which is discretionary with the court and will be granted only where there is a clear legal right established in plaintiff and a clear positive duty to be performed by defendant. It will lie only where such right and concomitant duty are found to exist and where there is no other adequate or appropriate remedy. It can never be invoked in a doubtful case: Homan v. Mackey, 295 Pa. 82, 144 Atl. 897 (1929). It may be used to compel a public officer to perform a ministerial duty, but cannot issue against such officer where the act in question rests within his discretion: Chilli v. McKeesport School District, 334 Pa. 581, 6 A. 2d 99 (1939). Since we find that no "grievance or controversy" existed,

the board was under no duty to set up a grievance panel and, hence, the demurrer will be sustained.

The question here to be determined concerns the extent of *rights* granted to teachers under the Public Employees' Act. It would appear that the effect of the act was to affirm the common law rule that public employes may not strike against the government-employer. See Norwalk Teachers' Assn. v. Board of Education of City of Norwalk, 138 Conn. 269, 83 A. 2d 482 (1951). The objective of the act was to prohibit strikes by public employes and to establish a procedure for the possible resolution of disputes which might develop in the employe-employer relationship. The act goes no further. The procedural device established by the act is in no way related to the *merits* of a particular "grievance or controversy". Rather, the act is to become operative upon the existence *alone* of a "grievance or controversy". The impact of the act was clearly and succinctly stated by Mr. Justice Cohen in Pittsburgh City Fire Fighters Local No. 1 v. Barr, 408 Pa. 325, 184 A. 2d 588 (1962), 327-28, as follows:

" . . . The Act of 1947 was an attempt by the legislature to provide a type of grievance machinery in *aid* of public employees who, by proscription of law (43 P.S. §215.2) are forbidden to go out on strike. The findings of the panel are merely advisory and are not binding upon the governmental authorities. The *prime purpose* of the legislation was to furnish a *forum* to which aggrieved public employees could carry their demands and there subject them to the light of public opinion: Erie Firefighters Local No. 293 v. Gardner, 26 Pa. D. & C. 2d 327 (1961), aff'd. per curiam 406 Pa. 395, 178 A. 2d 691 (1962)".

As indicated above, one of the primary purposes in the passage of this act appears to be the prohibition of strikes by public employes. The title of the act provides:

"An Act relating to strikes by public employees; prohibiting such strikes; providing that such employees by striking terminate their employment; providing for reinstatement under certain conditions; providing for a grievance procedure; and providing for hearings before civil service and tenure authorities, and in certain cases before the Pennsylvania Labor Relations Board".

In section 2 of the act, 43 PS §215.2, it is provided that:

"No public employee shall strike and no person exercising any authority, supervision or direction over any public employee shall have the power to authorize, approve or consent to a strike by one or more public employees".

Finally, in section 1 of the act, 43 PS §215.1 the legislature, after defining the terms "public employee" and "strike", went on to say:

". . . Provided, however, That nothing contained in this act shall be construed to limit, impair or affect the *right of any public employe* to the expression or communication of a *view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment, or the betterment thereof*, so long as the same is not designed to and does not interfere with the full, faithful and proper performance of the duties of employment; nor to limit, impair or affect the *right of any such employe* to attend meetings, conferences or hearings, *relating to such matters*, so long as such attendance is not designed to interfere with the full, faithful and proper performance of the duties of employment for the further purpose of equitably carrying out the provisions of this act. In order to avoid or minimize *any possible controversies* by making available full and adequate governmental facilities for the *adjustment of grievances*, the governmental agency involved, *at the re-*

*quest of the public employes,* shall, . . . set up a panel of three members.

"In the case of *grievances* or *controversies* involving professional employes of the public school system of the Commonwealth, the school board or Board of Public Education, *at the request of the employes,* shall set up a panel of three members. . . ." (Emphasis supplied.)

In considering the matter before us, we hold that the basic premise from which we must proceed is that "public employes" do not have the right to strike. It is on this basic principle that we conclude that the grant of the grievance procedure as a tool to air disputes, which may arise from the public-employer and public-employe relationship, is not a quid pro quo for the forfeiture of the right to strike. The reason is, of course, that public employes did not have such a right in the first instance. Rather, as has been stated heretofore, the procedural format established by the act is a grant of benefits by the legislature in an effort to better secure a harmonious atmosphere in the employment relationship.

As noted from the language above quoted, the provision for the setting up of a grievance panel is contained in that paragraph of the act which undertakes to define the word "strike". After defining the word, the legislature then went on to point out that which was self-evident, but which had to be stated; namely, that the prohibition against strikes must in no way be construed to limit the *right* of the public employe to express or communicate a view, grievance, complaint or opinion ". . . *on any matter related to the conditions or compensation of public employment or the betterment thereof . . .*" And so that there could be no possible area of doubt as to its intention, the legislature added that nothing in the act should be construed "to limit, impair or affect the right of

any such employee to attend meetings, conferences or hearings, *relating to such matters. . . .*" (Emphasis supplied.)

After these preliminaries, and in the same paragraph, the act then provides that for the purpose of minimizing controversies (relating to such matters), a grievance panel shall be set up at the request of public employes. It requires but little imagination to conclude that the legislative mind was, at this juncture, focused upon grievances or complaints having to do with "conditions or compensation of public employment, or the betterment thereof". It was this "right" that the legislature sought to establish and preserve for the public employe.

When all of the requisite elements provided for in the act are present, the public-employer is then bound to comply with the act. The effect of the act is to impose obligations upon the public-employer which prior to its enactment were nonexistent. And, for this reason, we must look carefully to discover whether or not plaintiffs in this case have an *enforceable* right.

Examination of plaintiff's complaint reveals that the professional employes of the school district are represented by two rival unions. As heretofore indicated, plaintiffs are members of an organization known as the Neshaminy Federation of Teachers, Local No. 1417. The other organization is known as the Neshaminy School District Education Association. It appears that plaintiffs ground their alleged *right* to be granted the check-off privilege (and, hence, their right to the appointment of a grievance panel) upon the fact that defendant school board presently deducts union dues, or provides a check-off system, for those employes belonging to the Neshaminy School District Education Association. The issue presented, therefore, is whether or not there is, in fact, a grievance or controversy upon which plaintiffs' right to the setting

up of a grievance panel may be said to exist. We hold that the privilege of having union dues deducted from plaintiffs' salaries and thence paid over to the federation is a matter of grace and not of right. Plaintiffs can point to no principle of law, statutory or otherwise, which imposes upon defendant the obligation to grant the privilege requested. Such privilege does not relate even remotely to "conditions or compensation of public employment, or the betterment thereof". Accordingly, we find that no grievance or controversy exists.

In Philadelphia Teachers' Association v. LaBrum, 415 Pa. 212, 203 A. 2d 34 (1964), Mr. Justice Cohen held that a request by the employes to the school board that the latter join with the former in the selection of an exclusive "teacher's representative" did not give rise to a "grievance" as provided for in the antistrike act. He stated, at page 216:

". . . Hence, the Board's refusal to join the Association in the selection of an exclusive teachers' representative did not generate a grievance or controversy and the refusal of the Board to convene a panel as requested by the teachers *to air* a non-existent grievance or controversy was not such an act as would compel the issuance of the writ".

As in the LaBrum case, we find that the real controversy here centers around the recognition of a union. In paragraph 10 of plaintiffs' complaint, it is stated, in part:

". . . Said Neshaminy School District Education Association is a professional association of teachers which is a rival of the Federation and which vies with the Federation for the membership and loyalty of professional employees of the School Board. Accordingly, the School Board's conduct in withholding or deducting from the salaries of defendant's employees, and transmitting to said Association the dues pay-

able to the Neshaminy School District Education Association by its members, and in refusing to grant this privilege and convenience to the members of the Federation, constitutes discrimination damaging to the prestige of the professional affiliation of, and a denial of equal privilege and convenience to, the plaintiffs and all other employees of defendant who are the members of the Federation".

Plaintiffs further state ". . . in addition, defendant's said conduct has been discriminatory as to the Federation, the individual plaintiffs and all members of the Federation. . . ." Consequently, we find that what is being sought is the recognition and establishment of an organization fixing itself in a position of a bargaining agent. The request of the employes does not touch upon the employer-employe relationship, but, on the other hand, is only concerned with the employe-union relationship. As stated in Hagerman v. City of Dayton, 147 Ohio 313, 71 N. E. 2d 246 (1947), at page 253:

"There is no municipal purpose served by the check-off of wages of civil service employees. Counsel for appellees argue that a check-off is a convenience to both the municipal appointee and the labor union. We must be realistic and take judicial notice of what is generally known, that the check-off is a means of maintaining membership. . . . The check-off is contrary to the spirit and purpose of the civil service laws of the state".

We believe that rather than a grievance or controversy such as was contemplated by the legislature, we have before us an effort on the part of plaintiffs and the federation to advance the position of the federation within the school district: Pittsburgh City Firefighters Local No. 1 v. Barr, supra, at page 334.

"To determine the scope of the Act, however, it is not sufficient to view only those areas that the Su-

preme Court has indicated *do* come within it. It is necessary also to consider the limitations and restrictions imposed upon the *use* of the Act as an instrument of mediation—those areas which *do not* come within the purview of the Act.": Lawson v. Board of Commissioners of the Twp. of North Versailles, 113 Pitts. L. J. 185, 188 (1965).

Were the matters complained of by plaintiffs elements of the employment relationship, such as wages, hours, working conditions, etc., or were they truly to be classified "day-to-day complaints" which are normally settled by the grievance procedure in the industrial context, we would have no hesitancy in granting the writ. See Philadelphia Teachers' Association v. LaBrum, supra. We do not find this to be the case, however, and, hence, the writ of mandamus must be denied.

ORDER

And now, July 3, 1967, defendant's preliminary objections are sustained and plaintiffs' complaint is dismissed.