v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2013.

Decided March 7, 2014.

Anthony J. Petrone, Philadelphia, for petitioner.

Sue Ann Unger, Senior Deputy Attorney General, Philadelphia, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge, BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY President Judge PELLEGRINI [1].

■ Before the Court are the cross-motions for summary judgment of A.S. and the Pennsylvania State Police (PSP) filed pursuant to Pa. R.C.P. No. 1035.2 [2] with respect to A.S.'s Petition for Review in the Nature of a Complaint in Mandamus (Petition) [3] seeking to compel PSP to change his sexual offender registration status under the former Section 9795.1 of the Sentencing Code, 42 Pa.C.S. § 9795.1,[4] from a lifetime registrant to a ten-year registrant. For the reasons that follow, we grant A.S.'s cross-motion for summary relief and the mandamus relief sought in the Petition

1. This opinion was reassigned to the authoring judge on February 18, 2014.

2. *See Bussinger v. Department of Corrections*, 29 A.3d 79, 81 n. 1 (Pa.Cmwlth.2011) ("We will treat the cross-motions as cross-applications for summary relief pursuant to Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure. 'A motion for summary relief may be granted only where no material fact is in dispute and the right of the moving party to relief is clear.'.") (citation omitted); *Department of Health v. Hanes*, 78 A.3d 676, 677 n. 1 (Pa.Cmwlth.2013) ("An application for summary relief filed under Pa. R.A.P. 1532(b) is generally the same as a motion for peremptory judgment filed in a mandamus action in the common pleas court. The application will be granted where the right to such relief is clear, but will be denied where there are material issues of fact in dispute or if it is not clear the applicant is entitled to judgment as a matter of law.") (citation omitted).

3. As the Supreme Court has explained:

The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty. *See Delaware River Port Auth. v. Thornburgh*, 508 Pa. 11, [20,] 493 A.2d 1351, 1355 (1985). Mandamus cannot issue "to compel performance of a discretionary act or to govern the manner of performing [the] required act." *Volunteer Firemen's Relief Ass'n of City of Reading v.*

*Minehart*, 415 Pa. 305, [311,] 203 A.2d 476, 479 (1964). This Court may issue a writ of mandamus where the petitioners have a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists. *Id.; see Board of Revision of Taxes v. City of Philadelphia*, 607 Pa. 104, [133,] 4 A.3d 610, 627 (2010). Moreover, mandamus is proper to compel the performance of official duties whose scope is defined as a result of the mandamus action litigation. *Thornburgh*, [508 Pa. at 20,] 493 A.2d at 1355. Thus, "we have held that mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law." *Minehart*, [415 Pa. at 311,] 203 A.2d at 479–80.

*Fagan v. Smith*, 615 Pa. 87, 90, 41 A.3d 816, 818 (2012).

4. Sections 9791 through 9799.9 of the Sentencing Code, 42 Pa.C.S. §§ 9791–9799.9, which were in effect at the time of A.S.'s criminal conviction and his initial registration with PSP in August 2002, were commonly referred to as "Megan's Law II." The original version of "Megan's Law" was held to be unconstitutional in *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999); however, in *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003), the Supreme Court held that Megan's Law II was constitutional. By operation of Section 9799.41 of

and we deny PSP's motion for summary relief.

This action arose out of the interactions between A.S., who was 21 years old at the time of the incident, and a 16–year–old female minor who engaged in consensual sexual relations. Because the age of consent in Pennsylvania is 16, the consensual sex between those individuals was not a crime. *See* Section 3122.1 of the Crimes Code, 18 Pa.C.S. § 3122.1. While it is not a crime to have sex with a 16–year–old minor, somewhat anomalously, it is a crime to photograph or cause to be photographed a 16-year-old having consensual sex and causing a minor to take photographs of herself engaging in the sexual acts. A.S. admitted that he met the victim online,

developed a relationship with her which led to consensual sex, and that he persuaded the victim to take photographs of herself in various sexual positions with her digital camera. He also used the minor's digital camera to photograph the two engaging in sexual relations.

As a result of this conduct, A.S. pled guilty in the Court of Common Pleas of Montgomery County (trial court) to one count of violating Section 6312(b) of the Crimes Code, 18 Pa.C.S. § 6312(b) (sexual abuse of children), one count of violating Section 6318(a)(5), 18 Pa.C.S. § 6318(a)(5) (unlawful contact with a minor), and one count of violating Section 6301, 18 Pa.C.S. § 6301 (corruption of minors). (Guilty Plea Colloquy, attached to PSP's Memo as Exhibit D4).[5] As a result of his guilty

---

the Sentencing Code, 42 Pa.C.S. § 9799.41, enacted on December 20, 2011, certain sections of the Sentencing Code, including Section 9795.1, expired on December 20, 2012. The subject matter of these expired provisions are now found in the Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10–.40. However, whether A.S. was a ten-year registrant will depend on this Court's interpretation of the now-expired Section 9795.1(b)(1) because if he was a ten-year registrant under that law, his ten-year registration period would have ended prior to the expiration of Megan's Law II and the effective date of SORNA. The former Section 9795.1 stated, in pertinent part:

**(a) Ten-year registration.**—Except as set forth in subsection (a.1) or (b), the following individuals shall be required to register with [PSP] for a period of ten years:

(1) Individuals convicted of any of the following offenses:

\* \* \*

18 Pa.C.S. § 6312 (relating to sexual abuse of children).

18 Pa.C.S. § 6318 (relating to unlawful contact with minor).

**(b) Lifetime registration.**—The following individuals shall be subject to lifetime registration:

(1) An individual with two or more convictions of any of the offenses set forth in subsection (a).

(2) Individuals convicted of any of the following offenses:

18 Pa.C.S. § 3121 (relating to rape).

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).

18 Pa.C.S. § 3124.1 (relating to sexual assault).

18 Pa.C.S. § 3125 (relating to aggravated indecent assault).

18 Pa.C.S. § 4302 (relating to incest) when the victim is under 12 years of age.

(3) Sexually violent predators.

(4) Individuals currently residing in this Commonwealth who have been convicted of offenses similar to the crimes cited in paragraph (2) under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation.

PSP is the state agency vested with the duty to create and maintain a statewide registry of sexual offenders under the former Section 9799.1 of the Sentencing Code, 42 Pa.C.S. § 9799.1, and the current Section 9799.16 of SORNA, 42 Pa.C.S. § 9799.16.

**5.** A.S. was charged with other violations but those charges were *nolle prossed.*

pleas, the trial court sentenced A.S. to two concurrent 5– to 23–month terms of imprisonment and a consecutive 5–year probationary term. (Trial/Plea/Sentence Form, attached to PSP's Memo as Exhibit D7; N.T. 2/28/02 [6] at 66–67, attached to PSP's Memo as Exhibit D6).

As a collateral consequence of his guilty plea to those charges, the former Section 9795.3 of the Sentencing Code, 42 Pa.C.S. § 9795.3, required the trial court to inform offenders at the time of sentencing of their registration requirements as a sex offender.[7] At A.S.'s sentencing, the trial court advised him that he would be subject to the reporting requirements set forth in the former Section 9795.1 of the Sentencing Code, 42 Pa.C.S. § 9795.1. (N.T. 2/28/02 at 59–60). The trial court also noted that it did not find A.S. to be a sexually violent predator (SVP) as assessed under the former Section 9795.4, 42 Pa.C.S. § 9795.4, who were subject to a lifetime registration requirement under the former Section 9795.1(b)(3), 42 Pa.C.S. § 9795.1(b)(3).

The sentencing hearing transcript establishes that the trial court, the prosecuting attorney, and A.S. all believed that he would be subject to a ten-year and not a lifetime registration requirement under the former Section 9795.1 of the Sentencing Code. At the hearing, A.S.'s mother testified on his behalf stating, "My son made a mistake, a terrible, terrible error in his life that's affected him. He's been punished. He will be punished. *He has a ten-year reporting component to this punishment.*" (N.T. 2/28/02 at 29–30 (empha-

sis added)). To this, the trial court responded, "I know." (*Id.* at 30). This statement by A.S.'s mother also supports his contention that, at the time of sentencing, he believed that the collateral consequence of his guilty pleas under Megan's Law II was a ten-year and not a lifetime registration requirement. In addition, while presenting the Commonwealth's position on sentencing, the Assistant District Attorney stated, "He's now facing *a ten-year registration for Megan's Law.* That's true. But why is he facing *this ten-year registration?* He is because what he did is a serious offense." (*Id.* at 45 (emphasis added)). No appeals were filed.

On August 2, 2002, upon his release from imprisonment, A.S. registered with PSP as a sex offender as required by Megan's Law II. Following the expiration of the ten-year period in August 2012, A.S. sought to have his name removed from the registry. PSP refused to do so, claiming that because A.S. pled guilty to one count each of violating Sections 6312(b) and 6318(a)(5) of the Crimes Code, which are each listed offenses requiring a ten-year registration period under the former Section 9795.1(a)(1) of the Sentencing Code, the former Section 9795.1(b)(1) required a lifetime registration because A.S. was "an individual with two or more convictions of . . . the offenses set forth in subsection (a)." Based on PSP's refusal to remove his name from the registry, A.S. filed the instant Petition in this Court and the parties filed cross-petitions for summary relief.[8]

---

**6.** "N.T. 2/28/02" refers to the transcript of the trial court's February 28, 2002 sentencing hearing.

**7.** *See now* Sections 9799.20 and 9799.23 of SORNA, 42 Pa.C.S. §§ 9799.20, 9799.23.

**8.** This Court overruled PSP's preliminary objections to the Petition by memorandum opin-

ion and order filed March 12, 2013. PSP subsequently filed an answer and new matter to the Petition and A.S. filed a reply to the new matter. In May 2013, A.S. and PSP filed a stipulation that, in light of the documents already filed as exhibits in the answer, new matter and reply to the new matter, they did not need to take any discovery and anticipat-

A.S. argues that he is entitled to summary relief because the offenses to which he pled guilty stemmed from a single criminal act, criminal episode or course of conduct, *i.e.,* causing the photographing of a minor in a sexual act and only require a ten-year registration under the former Section 9795.1(a)(1). He contends that the enhancement provision of the former Section 9795.1(b)(1), requiring lifetime registration for multiple offenses, only applies to those convicted of separate acts of misconduct that lead to more than one criminal conviction, *i.e.,* repeat offenders and recidivists. A.S. claims that the former Section 9795.1(b)(1). should not apply to individuals who only engage in a single act of misconduct that, by statute and prosecutorial discretion, results in multiple criminal charges and convictions. He asserts that his guilty pleas to the two enumerated offenses in the former Section 9795.1(a)(1) should be treated as a single conviction and not as two or more convictions for purposes of the former subsection (b)(1). As a result, A.S. argues that it is improper for PSP to classify him as a lifetime registrant. He asserts that to hold otherwise would violate the Equal Protection Clause because disparate registration classifications would emerge for similarly-situated defendants based solely on the charging decisions made by prosecutors.

In opposition to A.S.'s motion and in support of its own, PSP argues that it properly designated A.S. as a lifetime registrant under the former Section 9795.1(b)(1). PSP claims that the language of the former subsection (b)(1) is clear and that A.S. is subject to its provisions because he is "an individual with two or more convictions of any of the offenses set forth in subsection (a)." PSP asserts that the acts underlying the crimes are of no consequence; if the defendant is con-

victed of two or more crimes set forth in subsection (a)(1), he or she is a lifetime registrant under subsection (b)(1). Because A.S. is such a defendant, PSP contends that he cannot show a clear right to have his lifetime registrant designation changed and is, therefore, not entitled to mandamus relief.

The question here is whether A.S.'s guilty pleas to two separate crimes involving photographs of the same minor were one or two convictions for the purpose of the sex offender registration requirements contained in the former Section 9795.1 of the Sentencing Code. If the guilty plea is considered to be one conviction for this purpose, then under that provision, A.S. is only required to register as a sex offender for ten years under the former subsection (a)(1), but if they are considered to be two convictions, he would be subject to the lifetime registration requirement of the former subsection (b)(1).

In *Commonwealth v. Gehris,* 618 Pa. 104, 54 A.3d 862 (2012), a defendant, Patrick Gehris, began corresponding with what he believed to be a 19-year-old female in an internet chat room in October 2006. The female was actually a PSP officer trained to pose as a teenager to collect evidence and investigate sexual predators. In early 2007, Gehris's exchanges included requests to meet younger girls 11– to 13–years old that the PSP officer might know and that he fantasized about having sex with the two girls. Gehris wrote that he wanted to talk to the younger girl on the phone and asked the PSP officer to send him pictures of the younger girl. Gehris e-mailed the PSP officer photos of his face and shoulders and sent a digital camera containing pictures of his penis to an address that he had been given. About ten days later, Gehris called a

ed filing the instant cross-motions for summary relief.

number that he had been given and spoke with the PSP officer posing as the 19–year–old and another officer posing as a 13–year–old girl. During the conversation, Gehris asked for a picture of the younger girl's breasts and arranged a meeting at a motel approximately 200 miles from his residence with both of the girls to take place on February 19, 2007. Gehris suggested to the younger girl that she have some alcohol beforehand to relax herself. Gehris arrived at the motel at the arranged date and time, but turned his vehicle around in the parking lot and attempted to leave when he was arrested by PSP.

In April 2007, Gehris was charged with six crimes:

- unlawful contact with a minor to engage in involuntary deviate sexual intercourse in violation of Section 6318(a)(1) of the Crimes Code, 18 Pa.C.S. § 6318(a)(1), for arranging the meeting at the motel;
- unlawful contact with a minor to engage in the sexual abuse of children in violation of Section 6318(a)(5) for requesting the nude photographs;
- criminal solicitation for the sexual exploitation of children in violation of Section 902(a), 18 Pa.C.S. § 902(a), and Section 6320, 18 Pa.C.S. § 6320, for soliciting the 19-year-old to procure the 13-year-old for sexual exploitation;
- criminal solicitation for the sexual abuse of children in violation of Sections 902(a) and 6312 for soliciting the 19-year-old to obtain nude photographs of the 13-year-old;
- criminal solicitation for the corruption of a minor in violation of Sections 902(a) and 6301(a) for soliciting the 19-year-old to obtain a 13-year-old for sexual activity; and
- criminal attempt of the corruption of a minor in violation of Section 901, 18 Pa.C.S. § 901, and Section 6301(a), for driving to the motel to engage in the planned sexual activity.

■ Gehris pled guilty to the solicitation and attempt charges and was sentenced to a one- to two-year term of imprisonment with a consecutive eight-year probationary term. Because Gehris was guilty of both the criminal solicitation for the sexual exploitation of children and criminal solicitation for the sexual abuse of children, the trial court found that he was subject to the lifetime registration requirement of the former Section 9795.1(b)(1) of the Sentencing Code.[9]

On appeal from an unreported Superior Court opinion affirming the trial court's determination, the Pennsylvania Supreme Court considered whether Gehris was subject to the former Section 9795.1(b)(1) lifetime registration requirement due to his guilty pleas to two subsection (a)(1) offenses arising out of a four-month course of conduct that were contained in a single criminal information. However, the six sitting Justices were unable to reach a

9. The trial court relied on *Commonwealth v. Merolla*, 909 A.2d 337 (Pa.Super.2006), in which the Superior Court upheld a trial court's determination that lifetime registration was required under the former Section 9795.1(b)(1) for a defendant who pled *nolo contendere* to two counts of indecent assault and one count of statutory sexual assault stemming from his improper fondling of three girls under 16 years of age. *See Merolla*, 909 A.2d at 346–47. To the extent that *Merolla*

could apply to the instant case, it is factually distinguishable in that it involved convictions for crimes committed on multiple victims during distinct periods of time and criminal episodes. *See id.* at 340. Moreover, "although this court may look to decisions of the Superior Court for guidance, those decisions, unlike decisions of the Pennsylvania Supreme Court, are not controlling on this court." *Muntz v. Department of Transportation*, 157 Pa.Cmwlth. 514, 630 A.2d 524, 525 (1993).

consensus in the case, resulting in a *per curiam* affirmance of the Superior Court order due to an evenly divided Supreme Court.

The Opinion in Support of Affirmance (OISA) concluded that the language of the former Section 9795.1(b)(1) was clear and unambiguous and rejected an alternative interpretation that would limit the reach of the former subsection (b)(1) to only repeat offenders or recidivists. The OISA adopted a similar statutory-construction approach to that of the Superior Court in *Merolla,* explaining:

> Although the overall structure of Section 9795.1 conditions its registration scheme, in part, on the nature of particular sexual offenses, since lifetime registration is required of those who commit the arguably more serious offenses enumerated in Section 9795.1(b)(2), I find it significant that the legislature also chose to impose the very same lifetime registration requirement for those convicted of two or more of any of the offenses enumerated in Section 9795.1(a)(1), the vast majority of which are offenses against children. This, from my perspective, evidences a deliberate legislative judgment, consistent with its objective of protecting public safety, to make the differing length of registration requirements dependent not only on the nature of the specific sexual offenses for which an individual is convicted, but, also, on the occurrence of a multiplicity of certain types of offenses, particularly those committed against children. In my view, this reflects a considered determination by the legislature that, in order to protect the safety and general welfare of the public, the frequency with which a convicted defendant is determined to have engaged in certain types of prohibited conduct with children is a particularly important factor in deter-

mining whether he or she should be subject to lifetime registration.

*Gehris,* 618 Pa. at 114, 54 A.3d at 867–68 (footnote omitted).

The Opinion in Support of Reversal (OISR) agreed that, in isolation, the statutory language of the former Section 9795.1(b)(1) was "not ambiguous or unclear." *Gehris,* 618 Pa. at 125, 54 A.3d at 875. However, in the OISR's view, that does not necessarily address the problem:

> The problem confronted in this appeal arises when subsection (b)(1) is applied to an offender who has committed "two or more" subsection (a) offenses during the course of a single continuous criminal episode or course of conduct. As appellant points out, in our age of ever more rapid and varied technological communications, it is increasingly likely that this circumstance will arise often or in almost every case. This reveals an unfortunate lack of specificity in potential application of Section 9795.1. If the statutory scheme entails a "recidivist philosophy," as discussed in greater depth *infra,* then mechanical imposition of the lifetime registration requirement may not always be proper.

*Id.* at 125–26, 54 A.3d at 875.

In support of this position, the OISR reviewed the history of that recidivist philosophy and its adoption and application by the United States Supreme Court and our Supreme Court. One of the cases recounted was:

> *Commonwealth v. McClintic,* 589 Pa. 465, 909 A.2d 1241 (2006) [in which the Supreme Court held] that the defendant, who had two prior violent crime convictions (aggravated assault in 1987 and robbery in 1996), and then committed two crimes—robbery and burglary—in a June 2002 incident, could not be "double-charged" as, concurrently, a third and fourth strike offender for the 2002

offenses. In the Court's view, because the 2002 offenses arose out of a single criminal episode and the defendant had no opportunity to reform, they should be treated together as a third strike. *Id.* at 1251–52.

*Id.* at 131, 54 A.3d at 878.

The OISR concluded that the registration requirements of the former provisions of the Sentencing Code encompassed a recidivist philosophy and must be read in light of that philosophy, explaining:

The "two or more convictions" language in subsection (b) seems clear and unambiguous on the surface. But if Section 9795.1 is viewed as a whole and the General Assembly's legislative findings and declaration of policy at 42 Pa. C.S. § 9791 are read closely, it is clear that the primary concern is with sexually violent predators. Considering the nine subsections in Section 9791, the term "sexually violent predator" appears nine times, particularly in the provision addressing repeat offenders: "sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments and that protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. § 9791(a)(2). References to nonviolent offenders are comparatively few, just four in all, and two of these pertain specifically to recent amendments accounting for the circumstance of released "offenders" who may be homeless or without a "fixed place of habitation." *See* 42 Pa.C.S. § 9791(a)(1) & (b)(3); *see also Commonwealth v. Wilgus* [615 Pa. 32], 40 A.3d 1201 (Pa. 2012).

It is evident that in drafting Section 9795.1, the General Assembly meant to set up a graduated registration scheme. In this tiered approach, more serious (primarily violent) offenders and "true" recidivists who squander a given opportunity to reform are understandably subject to lifetime requirements. By contrast, lesser, first-time offenders, especially those who are nonviolent, receive an opportunity for rehabilitation and eventual freedom from the requirements if they "stay on the path" for ten years.

[I]t is true that appellant was convicted of "two or more" Megan's Law subsection (a) offenses, and without consideration of how this statutory scheme falls within the sphere of recidivist philosophy legislation detailed above, a strict, mechanical application of Section 9795.1(b) would result in imposition of the lifetime registration requirement. But, we would conclude that Section 9795.1 embodies the recidivist philosophy and reflects a belief that first-time and lesser offenders are capable of reform and rehabilitation if given an opportunity to do so under the still-punitive aegis of relatively lighter discipline, as well as the threat of harsher treatment next time, should there be a next time . . . .

*Id.* at 132–33, 54 A.3d at 878–79.

■ As a result, the OISR concluded that, "[w]e would therefore hold that a defendant convicted of 'two or more' subsection (a) offenses is subject to the lesser sanction of the ten-year registration requirement so long as it is clear that the offenses were part of the same course of criminal conduct. . . ." *Id.* at 133, 54 A.3d at 879. We find the OISR's interpretation of the former provisions of Section 9795.1 to be persuasive and applicable to the disposition of the instant cross-motions for summary relief and Petition.

If that interpretation is not adopted, then having a ten-year requirement under the former subsection (a) and a separate

lifetime reporting requirement under the former subsection (b) is meaningless. Every single event where a minor takes his or her own picture would result in multiple charges and convictions under the provisions set forth in the former Section 9795.1, which would mean it would read the ten-year reporting requirement out of these former provisions of the Sentencing Code. Also, that interpretation has the advantage of fostering the purpose of that provision, which allows a person to reform and "make a firm purpose of amendment"

in the ten years and not again engage in such behavior. It also provides a bright line for the administration of this provision as to when a person has to report for ten years or for a lifetime.[10]

Based on the foregoing, it is clear and free from doubt that the conduct here was a result of a "single criminal episode"[11] to which A.S. pled guilty, that it was all part of one "logically related act" making it one conviction for the purpose of the former Section 9795.1, and that A.S had no opportunity to reform.[12] Accordingly, as a mat-

**10.** *See* Section 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922(1), (2) ("In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; (2) That the General Assembly intends the entire statute to be effective and certain. . . .").

**11.** In *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177 (1983), our Supreme Court held that in order for there to be a "single criminal episode," the convictions must be "logically and temporally related:"

> [I]n ascertaining whether a number of statutory offenses are 'logically related' to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. If there is duplication, then the offenses are logically related and must be prosecuted at one trial. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require 'an absolute identity of factual backgrounds.'
>
> \*　　\*　　\*
>
> The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are 'logically related.' However, the definition of a 'single criminal episode' should not be limited to acts which are immediately connected in time. As the United States Supreme Court recognized in *Moore v. New York Cotton Exchange*, [270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926)]. 'Transaction is a

word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.' It is submitted that by requiring that criminal acts be logically related, the courts will be better able to implement the policies which the 'single criminal episode' test is designed to promote.

*Hude*, 500 Pa. at 491–92, 458 A.2d at 181–82 (quoting Comment, *Commonwealth v. Campana and Section 110 of the Crimes Code: Fraternal Twins*, 35 U. Pitt. L.Rev. 275, 286–87 (1973)).

**12.** As outlined above, the sentencing hearing transcript suggests that the trial court, the prosecuting attorney and A.S. all believed that the charges related to one incident and that A.S. would only be subject to a ten-year and not a lifetime registration requirement under the former Section 9795.1 of the Sentencing Code. (*See* N.T. 2/28/02 at 29–30, 45). PSP's standing to contend otherwise in the instant proceedings is problematic. *See Sammons v. Pennsylvania State Police*, 931 A.2d 784 (Pa. Cmwlth.2007). Moreover, even if the conduct is not considered as part of a single criminal episode, then as the OISR recounted:

> Most recently, in *Commonwealth v. Jarowecki*, 604 Pa. 242, 985 A.2d 955 (2009), this Court considered 18 Pa.C.S. § 6312, which criminalizes possession and dissemination of sexually explicit depictions of children. In *Jarowecki*, the question was whether the defendant's eight concurrent convictions were to be treated as one "first" offense, which would be a third-degree felony, and seven "second or subsequent" offenses, which would be more serious second-de-

ter of law, PSP erred in failing to change A.S.'s designation to a ten-year registrant under the former Section 9795.1(a)(1) of the Sentencing Code from its erroneous designation as a lifetime registrant under the former subsection (b)(1). As a result, A.S.'s Cross–Motion for Summary Relief and the relief sought in his Petition for Review in the Nature of a Complaint in Mandamus are granted; PSP's Motion for Summary Relief is denied.

## ORDER

AND NOW, this *7th* day of *March,* 2014, A.S.'s Cross–Motion for Summary Relief is granted and the relief sought in his Petition for Review in the Nature of a Complaint in Mandamus is granted; the Pennsylvania State Police's Motion for Summary Relief is denied. The Pennsylvania State Police, in its capacity under the former Section 9799.1 of the Sentencing Code, 42 Pa.C.S. § 9799.1, and the current Section 9799.16 of the Sex Offender Registration and Notification Act, 42 Pa.C.S. § 9799.16, is directed to change A.S.'s lifetime registration designation under the former Section 9795.1(b) of the Sentencing Code, 42 Pa.C.S. § 9795.1(b), to a 10–year registration designation under the former Section 9795.1(a) of the Sentencing Code, 42 Pa.C.S. § 9795.1(a).

DISSENTING OPINION BY Judge BROBSON.

The majority holds that summary judgment in favor of Petitioner A.S. is appropriate because, as a matter of law, A.S. was subject only to the ten-year registration period for sexual offenders because his two criminal convictions were the result of a "single criminal episode" and, therefore, should be treated as a single conviction for purposes of registration under Section 9795.1(b)(1) of the Sentencing Code.[1] I respectfully disagree.

On December 7, 2000, Petitioner A.S. was charged with one count under Section 902 of the Crimes Code[2] (relating to criminal solicitation), seven counts under Section 6312(b) of the Crimes Code (relating to sexual abuse of children in the context of causing a minor to be photographed engaging in a prohibited sexual act or simulation thereof), twenty counts under Section 6312(d) of the Crimes Code[3] (relating to sexual abuse of children in the context of possession of child pornography), and one count under Section 6318(a)(5) of the Crimes Code[4] (relating to unlawful contact with minor for purposes of engaging in sexual abuse of children in violation of Section 6312). (Crim. Complaint/Affidavit of Probable Cause, attached to Respondent's Memorandum of Law in support of Motion for Summary Judgment (Respondent's Memo), Ex. D2.) The affidavit of

---

gree felonies under the statute. There was no question raised to dispute that the eight convictions were separate crimes and not part of a single episode. This Court, construing the terms "first" and "second or subsequent" in Section 6312, first noted that "[s]uperficially considered," imposition of the more punitive grading scheme was viable; nevertheless, the Court continued, "the object to be attained is the authentic password to the true meaning of the words of a law." *Id.* at 966 (internal quotation marks omitted). Following a thorough review of recidivist philosophy precedent, the

*Jarowecki* Court concluded that Section 6312 embodied a recidivist philosophy, vacated the harsher grading that had been imposed by the lower courts, and remanded for resentencing. *Id.* at 961–69.
*Gehris,* 618 Pa. at 131, 54 A.3d at 878.

1. *See* Majority Op. fn. 4.

2. 18 Pa.C.S. § 902.

3. 18 Pa.C.S. § 6312(d).

4. 18 Pa.C.S. § 6318(a)(5).

probable cause supporting the criminal complaint alleged that when A.S. was 21 years old, he persuaded a 16-year-old girl to take digital photographs of herself performing sexual acts. (*Id.*) The victim downloaded the photographs and emailed them to A.S. (*Id.*)

When law enforcement officials investigated, they found photographs of the victim on A.S.'s computer, along with other child pornography downloaded from the internet. (*Id.*) A.S. admitted to law enforcement officers that he met the victim online, developed a relationship with the victim that led to consensual sex, and that he persuaded the victim to take photographs of herself in various sexual positions with her digital camera. (*Id.*) He also used the minor's digital camera to photograph the two engaging in sexual relations. (*Id.*) Bills of information subsequently filed identified a sixteen year old girl named "T." as the victim with whom A.S. had unlawful contact for purposes of Section 6318(a)(5) of the Crimes Code. (Bills of Information, attached to Respondent's Memo, Ex. D3.)

On October 5, 2001, A.S. pled guilty to one count of violating Section 6312(b) of the Crimes Code (relating to sexual abuse of children in the context of causing a minor to be photographed engaging in a prohibited sexual act or simulation thereof) and one count of violating Section 6318(a)(5) of the Crimes Code (relating to unlawful contact with minor for purposes of engaging in a violation of Section 6312).[5] (Guilty Plea Colloquy, attached to Respondent's Memo, Ex. D4.) As a result of A.S.'s guilty plea, the sentencing court sentenced A.S. to 5 months to 23 months of incarceration, followed by 6 years of probation. (Trial/Plea/Sentence form, attached to Respondent's Memo, Ex. D7.)

Disputes over the length of a particular sex offender's registration period have been resolved mostly through the criminal justice system in the courts of common pleas following sentencing, through a right of appeal to the Pennsylvania Superior Court, and ultimately by discretionary appeal to the Pennsylvania Supreme Court.[6] My disagreement with the majority is based on my review of the binding precedent of the Pennsylvania Supreme Court and the work of the Pennsylvania Superior Court in this area, to whose persuasive wisdom and logic we afford deference *See In re Superior–Pacific Fund, Inc.*, 693 A.2d 248, 253 (Pa.Cmwlth.1997).

In *Commonwealth v. Leidig*, 598 Pa. 211, 956 A.2d 399 (2008), the Supreme

**5.** A.S. pled guilty to an additional offense, corruption of the morals of a minor in violation of Section 6301(a) of the Crimes Code, 18 Pa.C.S. § 6301(a), but that offense is not relevant to the matter before the Court.

**6.** There are some outliers. For example, in *Thomas v. Barkley* (Pa.Cmwlth., No. 243 M.D. 2012, filed Nov. 28, 2012, 2012 WL 8668255), an unreported three-judge panel decision from this Court, an offender filed a mandamus action in our original jurisdiction, contending that he should only have been subject to a ten-year registration requirement and that application of post-conviction amendments to Megan's Law that changed his registration status from ten years to lifetime would be unconstitutional. We sustained preliminary objections and dismissed the petition, relying on statutory language and precedent from the Pennsylvania Supreme Court and Pennsylvania Superior Court on the subject. In *Haigh v. Commissioner of the Pennsylvania State Police* (Pa.Cmwlth., No. 518 M.D.2010, filed Dec. 30, 2010, 2010 WL 9519049), another unreported three-judge panel decision, an offender, convicted before the passage of the original version of Megan's Law in 1996, brought an action for declaratory relief in our original jurisdiction, seeking a declaratory order that he was not required to register at all under the law. In dismissing the offender's action on preliminary objections, we again looked to the plain language of the statute and persuasive authority from the Pennsylvania Superior Court.

Court reviewed the question of whether a plea of *nolo contendere* to certain criminal charges can be declared invalid where the sentencing court either fails to inform or misinforms the criminal defendant of the registration consequences of the plea under Megan's Law II. In that case, Todd Leidig (Leidig) entered a plea of *nolo contendere* to a charge of aggravated indecent sexual assault of his thirteen-year-old step-daughter. There was no mention of the registration requirements under Megan's Law II at the plea hearing. It was later determined that Leidig was *not* a sexually violent predator (SVP).

Four months later, at Leidig's sentencing hearing, Leidig was advised that he would be subject to a ten-year registration requirement. Later that same day, however, the attorneys for the Commonwealth and Leidig expressed concern to the sentencing court that although the crime for which Leidig pleaded guilty was a ten-year registration offense under the version of Megan's Law in effect at the time Leidig engaged in the criminal act, the subsequent passage of Megan's Law II reclassified that crime as a lifetime registration offense. The sentencing court and the attorneys, however, agreed that the version of Megan's Law in effect at the time Leidig committed the crime controlled and that, as a result, he would be subject to the ten-year registration period.

After sentencing, the Franklin County Parole and Probation Department informed Leidig that he would be subject to a lifetime registration under Megan's Law II. Leidig then filed a motion to withdraw his guilty plea, contending that his guilty plea was not knowing and intelligent, because he had been misinformed as to the registration consequences of his guilty plea. He also moved to modify his sentence. The trial court denied both motions, but, in a subsequent opinion pursuant to Pa.R.A.P. 1925(a), opined that Leidig was subject to a ten-year registration, not the lifetime registration requirement under Megan's Law II.

Leidig appealed, and the Pennsylvania Superior Court affirmed the trial court's denial of the two motions. The Superior Court, however, disagreed with the trial court on the period of registration. Citing its precedent in *Commonwealth v. Fleming*, 801 A.2d 1234 (Pa.Super.2002), the Superior Court held that because the purpose of Megan's Law II, in effect at the time of Leidig's sentencing, was to protect the public and not to punish Leidig, it was not, as Leidig argued, an *ex post facto* law in violation of the United States Constitution. *Leidig*, 598 Pa. at 217, 956 A.2d at 402. The Superior Court also held that Leidig was not entitled to withdraw his guilty plea as a result of the confusion over his registration status, concluding that the registration requirement under Megan's Law II was a collateral, rather than direct, consequence of the guilty plea. Because a criminal defendant's lack of knowledge about the collateral consequences of a guilty plea does not, as a matter of law, render a guilty plea unknowing or involuntary, the Superior Court reasoned that any misunderstanding at sentencing about the registration consequences of Leidig's guilty plea cannot serve as a basis to withdraw that plea. *Id.* at 217–18, 956 A.2d at 403.

In reviewing the issue it accepted for appeal, the Supreme Court rejected Leidig's argument that registration under Megan's Law II is a direct, rather than collateral, consequence of his conviction:

> Here, Appellant's registration requirements under Megan's Law II do not impose a criminal penalty. Rather, although Appellant had been advised by the court that he was subject to these requirements, they are plainly a collater-

al consequence of his plea, substantially no different from the recognized collateral consequences of deportation and driver's license suspension, and in certain respects less onerous than either. *Id.* at 220, 956 A.2d at 404 (footnotes omitted). In so doing, the Supreme Court reiterated its prior holdings in *Commonwealth v. Gomer Williams,* 574 Pa. 487, 832 A.2d 962 (2003), and *Commonwealth v. Lee,* 594 Pa. 266, 935 A.2d 865 (2007), wherein the Supreme Court held that the registration requirements of Megan's Law and Megan's Law II are remedial, not penal, and designed to protect the public, not to further punish the offender. The court continued:

> In [those cases], we established that the registration requirements … are not punitive. The logical extension of these holdings is that the registration requirements of Megan's Law are collateral, not direct, consequences of conviction. To the extent that there was any confusion following those decisions that the registration requirements of Megan's Law are collateral and not direct consequences of a plea or other conviction, we settle the issue here: such requirements are collateral consequences and, as such, a defendant's lack of knowledge of these collateral consequences to his or her pleading guilty or *nolo contendere* fails to undermine the validity of the plea.

*Leidig,* 598 Pa. at 223, 956 A.2d at 406.

As to the sentencing court's misinforming Leidig of the registration period at the time of sentencing, the Supreme Court found that to be an irrelevant consideration to the issue before it, that being the validity of Leidig's guilty plea four months earlier:

> [I]t is immaterial to our holding whether Appellant is subject to lifetime registration or only ten-year registration, an

issue we need not address at this time. Because the Megan's Law registration requirements, of whatever duration, are matters collateral to Appellant's plea, the Superior Court correctly concluded that in accepting Appellant's plea, the trial court need not have advised Appellant as to the length of the registration requirement, and that any misunderstanding as to the duration of the registration requirement was not a basis for a post-sentence withdrawal of the plea.

*Id.*

In *Commonwealth v. Merolla,* 909 A.2d 337 (Pa.Super.2006), both the Commonwealth and Alfred Merolla (Merolla) appealed rulings by the sentencing court in Merolla's criminal case. The relevant challenge, for purposes of the case now before us, was the Commonwealth's challenge to the sentencing court's decision that upon his release from prison, Merolla would be required to register with PSP under Megan's Law for ten years. The Commonwealth contended that Merolla should be a lifetime registrant under Section 9795.1(b)(1) of the Sentencing Code, due to his two separate convictions for indecent assault (18 Pa.C.S. § 3126), a predicate offense listed under Section 9795.1(a).

According to the Superior Court opinion, Merolla pleaded *nolo contendere* to, *inter alia,* two counts of indecent assault, stemming from "attacks" on three victims all under the age of sixteen. *Merolla,* 909 A.2d at 340. Following the plea and an assessment by the Pennsylvania Sexual Offenders Assessment Board to determine whether Merolla was a SVP, the sentencing court held, *inter alia,* that Merolla was not a SVP and that Merolla must register under Megan's Law II for a period of ten years. The Commonwealth filed a post-trial motion, challenging various aspects of the sentencing court's sentence, including

Merolla's registration classification. The trial court, however, did not rule on the post-trial motion within the time required by law, resulting in a deemed denial.

On appeal, the Superior Court agreed with the Commonwealth, holding that Merolla was required to register under Megan's Law for the rest of his life. Focusing on the statutory language found in Section 9795.1(b)(1) of the Sentencing Code—*i.e.,* "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)" shall be subject to lifetime registration, the Superior Court noted the absence of any word to suggest that the convictions must occur in separate criminal proceedings for the lifetime ban to be triggered. It contrasted this statutory language with that found in what is commonly referred to as Pennsylvania's Three Strikes statute, which imposes enhanced criminal penalties "[w]here the person had *at the time of the commission of the current offense previously been convicted* of two or more such crimes of violence arising from separate criminal transactions." 42 Pa.C.S. § 9714(a)(2) (emphasis added). Section 9795.1(b)(1), the Superior Court noted, includes no similar language that would limit its application to situations where there is a *previous* conviction. The legislature's decision to include a requirement of a prior conviction in the Three Strikes statute, the Superior Court reasoned, was consistent with the purpose of that law, that being to curb recidivism through enhanced sentencing. In contrast, the purpose of Megan's Law II is not to curb recidivism, but to protect the public. *Merolla,* 909 A.2d at 346–47. The court opined:

The sequence of events ...—first offense, first conviction, first sentencing, second offense, second conviction, second sentencing—does not apply to Megan's Law II based on a literal reading of the statute. Thus, it is irrelevant that Merolla had not been sentenced for his first offense before the commission of his second crime. Moreover, the intent of the legislature is better served by subjecting Merolla to heightened registration requirements because the public would continue to be notified of his whereabouts after the initial ten-year registration period.

*Id.* at 347 (citations omitted).

The Pennsylvania Supreme Court recently wrestled with the interpretation of subsection (b)(1) with regard to convictions for more than one predicate offense, although it ultimately provided no binding precedent. In *Commonwealth v. Gehris,* 618 Pa. 104, 54 A.3d 862 (2012), on allowance of appeal from an unreported memorandum decision of a three-judge panel of the Pennsylvania Superior Court, the Pennsylvania Supreme Court considered the question of whether a man (Gehris) who pled guilty to two subsection (a) offenses from a single criminal information, arising out of conduct that occurred over a four-month period, should be considered a lifetime registrant under the law. The trial court and the Pennsylvania Superior Court held that the statutory language was unambiguous and concluded that Gehris met the definition of a lifetime offender based on his conviction of two subsection (a) offenses.[7]

On appeal to our Supreme Court, the six sitting Justices were unable to reach a consensus in the case, resulting in a per

---

7. In its unreported memorandum opinion, the Superior Court held that its reported precedential decision in *Merolla* was applicable and binding and affirmed the sentencing court's decision to impose a lifetime registration requirement on Gehris. *Commonwealth v. Gehris,* 996 A.2d 541 (Pa.Super.2010) (per curiam).

curiam affirmance of the Superior Court's decision due to an evenly-divided court. In an opinion in support of affirmance (OISA), Justice Todd, joined by Justices Eakin and McCaffery, concluded that the language was clear and unambiguous and rejected an alternative interpretation that would limit the reach of subsection (b)(1) to repeat offenders or recidivists. In so doing, Justice Todd adopted a similar statutory-construction approach to that followed by the Superior Court in *Merolla*. She also observed:

> Although the overall structure of Section 9795.1 conditions its registration scheme, in part, on the nature of particular sexual offenses, since lifetime registration is required of those who commit the arguably more serious offenses enumerated in Section 9795.1(b)(2), I find it significant that the legislature also chose to impose the very same lifetime registration requirement for those convicted of two or more of any of the offenses enumerated in Section 9795.1(a)(1), the vast majority of which are offenses against children. This, from my perspective, evidences a deliberate legislative judgment, consistent with its objective of protecting public safety, to make the differing length of registration requirements dependent not only on the nature of the specific sexual offenses for which an individual is convicted, but, also, on the occurrence of a multiplicity of certain types of offenses, particularly those committed against children. In my view, this reflects a considered determination by the legislature that, in order to protect the safety and general welfare of the public, the frequency with which a convicted defendant is determined to have engaged in certain types of prohibited conduct with children is a particularly important factor in determining whether he or she should be subject to lifetime registration.

*Gehris*, 618 Pa. at 114, 54 A.3d at 867–68 (Todd, J.).

In an opinion in support of reversal (OISR), Chief Justice Castille, joined by Justices Saylor and Baer, agreed that, in isolation, the statutory language of subsection (b)(1) was "not ambiguous or unclear." *Gehris*, 618 Pa. at 125, 54 A.3d at 875 (Castille, C.J.). But that, in the Chief Justice's view, does not necessarily address the problem:

> The problem confronted in this appeal arises when subsection (b)(1) is applied to an offender who has committed "two or more" subsection (a) offenses during the course of a single continuous criminal episode or course of conduct. As appellant points out, in our age of ever more rapid and varied technological communications, it is increasingly likely that this circumstance will arise often or in almost every case. This reveals an unfortunate lack of specificity in potential application of Section 9795.1. If the statutory scheme entails a "recidivist philosophy," . . . then mechanical imposition of the lifetime registration requirement may not always be proper.

*Id.*, 54 A.3d at 875 (Castille, C.J.). The Chief Justice then set out his case as to why the registration requirement in the law encompasses a recidivist philosophy and thus must be read in light of that philosophy:

> We would therefore hold that a defendant convicted of "two or more" subsection (a) offenses are subject to the lesser sanction of the ten-year registration requirement so long as it is clear that the offenses were part of the same course of criminal conduct. We would therefore vacate the Superior Court's order, vacate the portion of appellant's sentence imposing lifetime registration, and return this matter to the trial court for

imposition of the ten-year registration requirement.

*Id.* at 133, 54 A.3d at 879 (Castille, C.J.).

By per curiam Order dated July 2, 2013 (No. 526 MAL 2012), the Pennsylvania Supreme Court granted the Petition for Allowance of Appeal of Adam Mielnicki (Mielnicki) from a June 13, 2012, unreported memorandum decision of a three-judge panel of the Superior Court (No. 721 EDA 2011), which affirmed the sentencing court's imposition of lifetime registration under Megan's Law II because Mielnicki pled guilty to five counts of sexual abuse of children (18 Pa.C.S. § 6312), relating to possession of child pornography. Mielnicki contended that the imposition of lifetime registration under Section 9795.1(b)(1) was in error, because he pled guilty to the five counts in a single criminal proceeding and had no prior convictions. The Superior Court rejected this argument, relying, as it did in *Gehris,* on its binding precedent in *Merolla.*

In its July 2, 2013 Order, the Supreme Court accepted review of the following issues, as stated by Mielnicki in his petition:

a. Does the Superior Court's decision to affirm [Petitioner's] lifetime registration requirement conflict with other Superior Court decisions and a decision of this Court?

b. Is the question of whether 42 Pa. C.S. § 9795.1 is a recidivist statute of such substantial public importance as to require prompt and definitive resolution by this Court?

The Supreme Court has since docketed the appeal (No. 45 MAP 2013). Based on my review of the docket, it appears that all of the parties' briefs have been filed and the matter has been scheduled for oral argument before the Supreme Court on March 11, 2014, in Philadelphia.

At the heart of the case now before this Court is the question of whether A.S., based on his conviction history, is "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)" of Section 9795.1 of the Sentencing Code, such that he must register under Megan's Law II for the rest of his life pursuant to Section 9795.1(b)(1). A.S. advances two theories as to why he should not be subject to the lifetime registration requirement under Section 9795.1(b)(1).

First, he contends that his two convictions (*i.e.,* guilty pleas) should be treated as one conviction for purposes of Section 9795.1(b)(1), because they arose out of a single criminal episode or course of conduct. In doing so, A.S. argues that Section 9795.1(b)(1) should not apply in his case, because the legislature's intent in that section was to deal with repeat offenders—*i.e.,* recidivists. The majority agrees and, for that reason, grants summary judgment in favor of A.S. and orders the PSP to change A.S.'s registration period from lifetime to ten years, effectively removing A.S. from the sex offender registry. This, however, is the same argument raised by the appellant and rejected by the Pennsylvania Superior Court in its reported decision in *Merolla.* In at least two subsequent unreported decisions (*Gehris* and *Mielnicki*), the Superior Court rejected similar, if not identical, arguments, relying on its precedent in *Merolla.* And although I recognize Chief Justice Castille's well-written OISR in *Gehris,* adopted by the majority, his view did not garner enough support from his colleagues to upset *Merolla,* dutifully followed by the Superior Court since 2006.

As noted above, decisions by the Superior Court are not binding on this Court; rather, we consider them for their persuasive value. In addition, because neither the OISA or OISR in *Gehris* garnered the

support of a majority of the justices, they lack precedential value. *See Commonwealth v. Silverman*, 442 Pa. 211, 218 n. 8, 275 A.2d 308, 312 n. 8 (1971). But while it may be a reach to pronounce the law on this issue settled finally, particularly with *Mielnicki* pending before the Pennsylvania Supreme Court, it is settled at least in the Superior Court, which has had repeated opportunities to address it and is more likely than this Court to see the issue in the future. The Superior Court's analysis in *Merolla*, followed in *Gehris* and supported by at least three of the justices in the OISA, is compelling enough that I see no reason to adopt a contrary interpretation of the statute, which may lead to greater confusion among prosecutors, criminal defendants, victims, and our sentencing courts with respect to the meaning of Section 9795.1(b)(1) and similar provisions in the Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10–.40.

A.S.'s second theory, not addressed by the majority, is that the legislature could not have intended that the difference between ten-year registration and lifetime registration is dependent solely on the number of convictions (a matter of plea negotiation and/or prosecutorial discretion) where the offender actually engaged in only a single act of criminal misconduct. A.S. contends that though he pled guilty to two predicate offenses under Section 9795.1(a)(1) of the Sentencing Code, he actually committed only one criminal act that just happened to meet the elements of both predicate offenses.

The logic of A.S.'s argument is as follows. Although charged with a variety of offenses, A.S. ultimately pled guilty to only two pertinent counts. A.S. pled guilty to a violation of Section 6312(b) of the Crimes Code, which, relevant to the matter now before us, makes it unlawful for "[a]ny person [to] cause[ ] ... a child under the age of 18 years to engage in a prohibited sexual act or in the simulation of such act ... if such person knows, has reason to know or intends that such act may be photographed, videotaped, depicted on computer or filmed." A.S. also pled guilty to a violation Section 6318(a)(5) of the Crimes Code, which makes it unlawful for a person to "intentionally ... contact ... a minor ... for the purpose of engaging in an activity prohibited under ... [S]ection 6312 (relating to sexual abuse of children)." Thus, the elements of these two predicate offenses overlap in such a way that an individual may commit *both* offenses by engaging in a *single* act of contacting a minor for the purpose of causing the minor to photograph herself engaging in a real or simulated sexual act. Also, an individual cannot be guilty of a violation of Section 6318(a)(5) unless he is attempting to commit a violation of Section 6312. In other words, in the absence of an attempt to violate Section 6312, there cannot be a violation of Section 6318(a)(5).

A.S. contends that both of his convictions relate to the single act of contacting a minor, T., for the purpose of causing the minor to photograph herself engaging in a sexual act. A.S. violated Section 6312(b) of the Crimes Code by causing photographs to be taken that would be considered child pornography. Because a violation of Section 6318(a)(5) of the Crimes Code occurs when one contacts a minor for the purpose of engaging in activity prohibited under Section 6312, the act of contacting T. for the purpose of causing her to photograph herself could form the basis for both charges. If it did, A.S.'s single act of contacting T. for the purpose of generating child pornography *simultaneously and automatically* constituted violations of two predicate offenses for purposes of Megan's Law II registration.

This theory presupposes a different fact pattern than *Gehris*. Gehris's convictions, although arising from the same course of criminal conduct, did not involve a single act that simultaneously and automatically constituted a violation of two predicate offenses. Gehris pled guilty to solicitation for the sexual exploitation of children (18 Pa.C.S. §§ 902(a) and 6320)[8] and solicitation for the sexual abuse of children (18 Pa.C.S. §§ 902(a) and 6312)—two offenses with entirely different elements that must be established. Solicitation for the sexual abuse of children is, in essence, soliciting child pornography, whereas solicitation for the sexual exploitation of children involves an attempt to procure a minor for purposes of sexual exploitation—*i.e.,* "[a]ctual or simulated sexual activity or nudity arranged for the purpose of sexual stimulation or gratification of any person." 18 Pa.C.S. § 6320(c). Thus, one may engage in one of those offenses without automati-

cally and simultaneously engaging in the other offense. In other words, one could seek to obtain photographs of a child engaged in a sexual activity, which would constitute a violation of Section 6312 of the Crimes Code but would not at all implicate Section 6320 of the Crimes Code. Conversely, one could seek to procure a minor for the purposes of sexual exploiting the child without photographing, videotaping, depicting on a computer, or filming any sexual acts of the minor, thereby violating Section 6320 but not implicating Section 6312. If, however, an individual engaged in a variety of activities as part of a criminal episode, he could violate both Sections 6312 and 6320 based upon the different activities in which he engaged.

Such was the case in *Gehris*.[9] Gehris solicited and obtained from an undercover state police officer nude photographs of what Gehris thought to be a thirteen-year-

---

8. Section 902 of the Crimes Code, relating to "criminal solicitation," provides, in part:

(a) Definition of solicitation. A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

Section 6320 of the Crimes Code, relating to sexual exploitation of children, provides:

(a) Offense defined.—A person commits the offense of sexual exploitation of children if he procures for another person a child under 18 years of age for the purpose of sexual exploitation.

(b) Penalty.—An offense under this section is a felony of the second degree.

(c) Definitions.—As used in this section, the following words and phrases shall have the meanings given to them in this subsection: "Procure." ● To obtain or make available for sexual exploitation.

"Sexual exploitation." ● Actual or simulated sexual activity or nudity arranged for the

purpose of sexual stimulation or gratification of any person.

9. In the OISA, Justice Todd described Gehris's activities as follows:

[Gehris], . . . a 42-year-old man . . . deliberately and repeatedly engaged in communications of an explicit sexual nature regarding an individual whom he believed to be a [thirteen]-year-old girl. In these conversations, he graphically detailed his fantasies of having sexual encounters with a young girl, solicited nude pictures of the person he thought was the [thirteen]-year-old girl, mailed a digital camera with a picture of his penis loaded therein to the person he thought was the [thirteen]-year-old girl, methodically arranged a meeting with the person he believed to be the [thirteen]-year-old girl at a motel room over 200 miles away from his home, and drove continuously for an entire day specifically to have sex in the motel room with both the person he thought was the [thirteen]-year-old girl, and the person whom he believed to be her 19-year-old friend—known to him by the internet chatroom appellation of "joeyGalPa". *Gehris,* 618 Pa. at 105–06, 54 A.3d at 862 (Todd, J.).

girl in violation of Section 6312. Gehris also arranged with the undercover officer for Gehris to meet the thirteen-year-old girl in a hotel room for the purpose of engaging in sexual activity with her in violation of Section 6320. Thus, in *Gehris*, the activities that constituted violations of the two predicate offenses were distinct.[10]

In the OISA, however, Justice Todd recognized concerns expressed by Chief Justice Castille in the OISR, suggesting there may be a consensus among the justices on the issue of whether the lifetime registration requirement of Section 9795.1(b)(1) of the Sentencing Code applies where there are multiple convictions for but a single act of criminal misconduct. Justice Todd noted:

> I acknowledge the legitimate concern of the OISR regarding the advent of modern technology, and its undeniable potential to result in an individual compiling multiple criminal violations during one criminal episode or course of conduct. OISR at 13. Thus, that factor, coupled with the multiplicity of criminal statutes covering the very same conduct, makes it conceivable that an individual can commit a host of statutory offenses *with but one action.* Here, however, Appellant was convicted of two of the offenses enumerated in Section 9795.1(a)(1) for two separate criminal acts involving one minor victim, and he engaged in a repeated pattern of criminal conduct involving similar behavior for a four-month period; *hence, this case does not present the question of whether Section 9795.1(b)(1) requires imposition of lifetime registration in instances where a defendant is convicted of two or more of the offenses listed in Section 9795.1(a)(1) for only one criminal act.*

*Gehris,* 618 Pa. at 114, 54 A.3d at 868 n. 14 (Todd, J.) (emphasis added).

The Statutory Construction Act commands us to construe statutory language in a manner that is consistent with legislative intent. 1 Pa.C.S. § 1921(a). As part of that analysis, we must presume that the General Assembly, in crafting legislation, "does not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1). Based on the legislative findings and declaration of policy in Megan's Law II, and our Supreme Court's decision in *Leidig,* we know that the General Assembly's paramount concern in passing Megan's Law II, particularly the registration component of the law, was "to protect the safety and general welfare of the people of this Commonwealth." 42 Pa.C.S. § 9791(b). By creating a two-tier registration structure, the General Assembly determined that, as a matter of policy, certain offenders posed a greater risk to public safety than others.

Under Section 9795.1(a) of the Sentencing Code, any individual "convicted of any of the [listed] offenses," must register for ten years. Under Section 9795.1(b)(1), "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)," must register for a lifetime. The General Assembly, therefore, must have reasoned that those offenders whom it intended to fall under Section 9795.1(b)(1) are offenders who pose a *greater* risk to public safety than those who would otherwise be ten-year registrants. It is not unreasonable for the General Assembly to have determined that offenders who are convicted of engaging in two or more acts (or offenses) of criminal misconduct pose a greater risk to public

---

**10.** The same can be said of the predicate offenses in *Merolla.* Specifically, Merolla pled *nolo contendere* to two *separate* counts of indecent assault that occurred on *different* dates. *See Merolla,* 909 A.2d at 340.

safety than those who engage in a single act of criminal misconduct.

Sometimes, and perhaps most times, a determination of whether an offender has engaged in multiple acts of criminal misconduct is apparent by the number of convictions. But, as explained above, it may not always be so apparent. Regardless of the number of technical convictions, an offender who commits a single act of criminal misconduct that happens to be chargeable as two predicate offenses under Section 9795.1(a)(1) poses no greater risk to the public simply because he pled guilty to the two charges. Consistent with the public safety rationale, then, I would interpret the General Assembly's use of the terms convicted/convictions and offenses in Section 9795.1(a)(1) and (b)(1) as differentiating between an offender who has engaged in a single act of criminal misconduct (a one-off) and an offender who has engaged in two or more acts of criminal misconduct, the latter class of whom poses a greater risk to public safety than the former.

It is the criminal action of the offender that makes the offender a risk to the public, not the statutes themselves. And, if the General Assembly believed that a particular criminal act warranted lifetime registration, it would have included all of the statutory criminal offenses that could encompass that act in the list of lifetime offenses found in Section 9795.1(b)(2) of the Sentencing Code and not in the list of ten-year offenses in Section 9795.1(a). In creating the tiered reporting structure in Megan's Law II, and in light of the public safety purpose of the law, I do not discern an intent by the General Assembly to place the form of charging decisions and plea agreements above the substance of the criminal act. A contrary interpretation would be unreasonable and absurd, because no public safety purpose is served by a scheme that subjects two offenders, who engage in a single and similar criminal act, to disparate registration requirements merely because one pled guilty to one criminal charge and the other pled guilty to two.

I agree with PSP, however, that based on the record before the Court on summary judgment, a genuine issue of material fact remains as to whether, in the course of pleading guilty to violating Section 6312(b) of the Crimes Code (relating to sexual abuse of children in the context of causing a minor to be photographed engaging in a prohibited sexual act or simulation thereof) and Section 6318(a)(5) of the Crimes Code, A.S. was convicted of engaging in a single criminal act or two criminal acts. A.S. contends that he pled guilty only to contacting a minor, T., for the purpose of causing the minor to photograph herself engaging in a sexual act and that this single act resulted in convictions under both Sections 6312(b) and Section 6318(a)(5) of the Crimes Code. There is record support for A.S.'s position.

As the majority notes, at sentencing, the sentencing court, prosecuting attorney, and A.S. expressed, in one way or another, a shared view that A.S. would be subject only to a ten-year registration under Megan's Law II. While PSP is correct that subjective beliefs may not be controlling for purposes of determining whether A.S. was convicted of one or two offenses for purposes of the period of registration under Megan's Law (*Leidig*),[11] those record statements can serve as evidence for purposes of establishing whether A.S. pled guilty to offenses related to a single act or multiple acts of misconduct.

11. *But see Commonwealth v. Hainesworth,* 82 A.3d 444 (Pa.Super.2013) (en banc) (enforcing plea agreement that offender was not required to register under SORNA).

There is other record evidence, however, that casts doubt on A.S.'s position. During the hearing where A.S. entered his guilty plea, the trial court reviewed with A.S. the nature of the charges against him to which he was about to plead guilty. Following a review of the legal substance of each charge, the trial court asked the following:

> Q: Are you willing to agree that the affidavit of probable cause as it relates to these three charges[12] only is true and correct and can be made a part of the record?

(N.T., Oct. 5, 2001, attached to Respondent's Memo, Ex. D5 at 6.) A.S. responded, "Yes." (*Id.*) In addition to detailing facts about how A.S. contacted T. for the purpose of causing her to photograph herself engaging in sexual acts, the affidavit of probable cause also provides that A.S. admitted to using T.'s digital camera to photograph the two of them engaged in sexual relations. (Respondent's Memo Ex. D2 at 4.) This act by A.S., separate and apart from his contacting T. to cause her to photograph herself, would support a charge under Section 6312(b) of the Crimes Code.

For the reasons set forth above, I respectfully dissent from the majority's adoption of the "single criminal episode" position, repeatedly rejected by the Pennsylvania Superior Court. Nonetheless, if A.S. could prove by a preponderance of the evidence that his convictions arose from a single act of misconduct, he would be entitled to the relief he seeks in this lawsuit.

In light of the conflict in the record evidence, however, that question cannot be resolved through summary judgment. Accordingly, I would deny the parties' cross-motions for summary judgment.

Judge LEADBETTER joins in this dissent.

---

12. As previously noted, the third charge is not a predicate offense for purposes of Megan's Law II registration and, therefore, is not relevant to the issues in this appeal.